ELIZABETH B. DICKEY v. CONTINENTAL CASUALTY INSURANCE COMPANY.

Decided June 24, 1905.

**1.—Life Insurance—Countersigning Policy—Completion of Contract.**

A life policy providing that it should not be binding on the insurance company until countersigned by its policy writer will not sustain a recovery by the beneficiary therein where the policy was not so countersigned until after the death of the insured, the officers of the company being in ignorance of the death at that time.

**2.—Same—Verbal Contract of Insurance.**

A recovery could not be had upon a verbal contract of insurance where the insured had told the insurance solicitor to make out his application for insurance, and an assignment of his wages in payment of the first premium, and this was not done until after the death of the insured.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Green & Blanton, Blanton & Bosson* and *Culp & Giddings,* for appellant.—1. The court erred in peremptorily instructing a verdict for defendant, because the evidence showed that at the time of Dickey's death a valid contract of insurance was in effect between him and defendant consisting of a policy of insurance, which was produced, which policy was in favor of plaintiff for $2,000. Halle v. New York Life Ins. Co., 58 S. W. Rep., 822; Gordon v. United States Casualty Co., 54 S. W. Rep., 98; Daily v. Accident Ass'n, 26 L. R. A., 171; Franklin Ins. Co. v. Coit, 20 Wall (U. S.), 567; Lightbody v. Insurance Co., 23 Wend., 18; Insurance Co. v. Cummins, 54 S. W. Rep., 431; 16 Am. and Eng. Ency. Law (2d ed.), 851-853; 48 S. W. Rep., 1108.

2. Where pending action by the home office on an application for a policy of insurance a preliminary agreement, either resting in parol entirely or partly verbal and partly written, is entered into between the authorized agent of the company and the applicant, from which it appears that the parties intended the insurance to take effect until the application was either accepted or rejected, and the applicant dies before such final action, the company is liable under such preliminary agreement. 16 Am. and Eng. Ency. Law (2d ed.), 851-853; Pacific Ins. Co. v. Shaffer, 70 S. W. Rep., 566; Halle Case, 58 S. W. Rep., 823; Fidelity Co. v. Ballard, 48 S. W. Rep., 1074.

*B. K. Goree* and *Chas. K. Lee,* for appellee.—1. A subject-matter, a life in being, is essential to the validity of every contract of life insurance. The policy by its express terms provides that it is not to be

effective unless countersigned and delivered in Chicago. Dickey having died before such counter-signature, the contract never became effective. 16 Am. and Eng. Ency. Law (2d ed.), p. 847; Connecticut Mut. Life Ins. Co. v. Rudolph, 45 Texas, 454; Coker v. Atlas Ins. Co., 31 S. W. Rep., 703; Cohen v. Mutual Res. Fund Ins. Co., 28 Fed. Rep., 705; Misselhorn v. Mutual Res. Fund Ins. Co., 30 Fed. Rep., 545; Paine v. Pacific Mut. Life Ins. Co., 51 Fed. Rep., 689; Giddings v. N. W. Life Ins. Co., 102 U. S., 108, 109; L. C. P., Bk. 26, p. 92; Whiting v. Massachusetts Ins. Co., 37 Am. Rep., 317; Mutual Life Ins. Co. v. Young, 90 U. S., 85; L. C. P., 152; Steinle v. New York Life Ins. Co., 81 Fed. Rep., 489; Jacobs v. New York Life Ins. Co. (Miss.), 15 So. Rep., 639; Neohistadt v. Mutual Life Ins. Co., 115 Fed. Rep., 81; Newcomb v. Prov. Fund. Soc., 38 Pac. Rep., 61; Equitable Life Ins. Soc. v. McElroy, 83 Fed. Rep., 631; Bodger v. American Pop. Life Ins. Co., 4 Am. Rep., 547; Pace v. Prov. Savings, etc., 113 Fed. Rep., 13; Dickerson Adm. v. Prov., etc., Co., 52 S. W. Rep., 825.

2.    The preliminary negotiations, evidenced by the application and the paymaster's order, in no sense established a contract of insurance, but, to the contrary, by their own terms, show that they constitute only an offer on the part of Dickey to take insurance, and they could not become effective as a contract until accepted by the insurance company, and, death having intervened before acceptance, no contract was ever completed.    Dickey's death revoked the offer to take insurance, and after his death there was nothing on which the insurance company could act.    Piedmont, etc., Ins. Co. v. Ewing, 92 U. S., 377; Central Mut. Life Ins. Co. v. Parham, 80 Texas, 518, 16 S. W. Rep., 316; Duluth v. Knoxville Ins. Co., 1 S. W. Rep., 689; Fitzmaurice v. Insurance Co., 84 Texas, 61, 65.

SPEER, ASSOCIATE JUSTICE.—The appellant instituted this suit against the appellee to recover the sum of $2,000 upon a policy of insurance issued upon the life of her deceased husband.    The district judge before whom the case was tried, directed a verdict against her, and she has appealed.

· That provision of the written application for insurance which we deem to be material, is as follows. "Mr. S. W. Gibson, agent: I hereby apply · for insurance in the Continental Casualty Company based upon the following statements, each of which I warrant to be true, and I agree to accept the policy now issued by the company subject to all of its conditions and provisions, and subject to the charter and classifications of risks of the company; said insurance to continue one year from date of said policy, and to include accidents and health insurance for one year from said date; . . . I hereby warrant each of the above answers to be full, complete and true, and that no statements were made to or by the agent of said company contradictory thereto. . . . I agree that any order or assignment given by me to the company in lieu of the installment payments above stipulated for, shall be and form a part of my contract with the company, and that the company does not accept or incur any responsibility for the collection thereof.    I understand that the agent presenting this application has no power to make or renew any contract of insurance, or to waive or vary any part of

this application. In witness whereof I have hereunto set my hand, this 18th day of December, 1902.

(Sign here)   William S. Dickey, Applicant.

"Signed and delivered in the presence of S. W. Gibson."

The material parts of the assignment of wages executed at the same time are as follows: "Paymaster's order for $61.20, No. 544075. In lieu of payments provided in my application for accident insurance in the Continental Casualty Company, I hereby assign to said company the sum of $61.20 of my claim against the Gulf, Colorado & Santa Fe Railway Company for services rendered and to be rendered by me, due and payable in five monthly installments, as follows: . . . It is understood and agreed that the installments above provided for, respectively, shall provide for my insurance under a policy to be issued to me by said company and bearing even date and number herewith for ratable period, to wit; . . . No agent shall alter or waive any of the conditions of this order. . . . Dated at Gainesville, the 18th day of December, 1902. Signature, William S. Dickey. Agent's name, S. W. Gibson."

These instruments were executed by the appellee's agent, S. W. Gibson, under the following circumstances: About December 1, 1902, Gibson solicited Dickey to take a policy of insurance with appellee, and it was then agreed between them that Gibson could "go ahead and write him up for the sum of $2,000 whenever the first premium could be taken out of his January earnings," which the evidence indicates could not be done prior to about December 18. Gibson did nothing toward filling out the application and assignment until the morning of December 20, when he went to the railway yard office to have Dickey to sign the application. Dickey was not at the yard, and Gibson, under the authority previously given him, filled out and signed both the application and the assignment above set out. These papers were mailed to the home office at Chicago at 5 o'clock p. m., December 20, and upon them appellee issued its policy of insurance in favor of appellant as beneficiary named in the application for the amount sued for. The policy contained the following limitation: "In witness whereof the Continental Casualty Company has caused these presents to be signed by its president and secretary; but the same shall not be binding upon the company unless countersigned by the policy writer and delivered at the general office of the company, in the city of Chicago, State of Illinois." and is endorsed, "Countersigned, D. E. Dunn, Policy Writer, at 12 o'clock noon, Standard Time, December 18, 1902." A. S. Dickey died December 20, at 10:20 o'clock, a. m. The actual date of the counter signature of the policy was December 27, 1902, the policy writer, as well as the other officers, testifying that at the time they were in ignorance of the fact of Dickey's decease.

In determining whether or not the court erred in withdrawing the case from the jury, it becomes necessary to inquire if the transaction culminating in the filling out of the application and assignment of wages by Gibson on December 20, constituted a complete contract of insurance. In this connection it is proper, if not necessary, to examine

a little more in detail as to the evidence bearing upon the question of the exact time of Dickey's death with reference to the time when the application was signed by Gibson. The agent Gibson testified that he took breakfast on that morning about 9:30 and went immediately to the yard office, though he admitted he might have stopped on the way to talk with some one. That on reaching the yard office he found from the bulletin board that Dickey was out; that he signed the application and inserted the name of the beneficiary before he left the yard office, but that he could not say whether he signed it right away after he got there or whether he signed it just before dinner, but he did remember that he signed the application before he left the yard office; that it may have been signed at 12 o'clock. He would express no opinion as to the time when it was signed, further than that it was between 9:30 and 12. He testified that he got the name of the beneficiary from a man named Burford. Burford testified that he got appellant's name for Mr. Gibson at the latter's request; that he got her name for Gibson after Dickey's death; that he and the agent Gibson had some conversation in which they spoke about Mr. Dickey having been hurt or killed before he got Mrs. Dickey's name; that he and Mr. Gibson went to Mrs. Dickey's house and there obtained her name. This is all there is to be found in the record which would enable a jury to determine the date of the signing of the application. From this evidence we conclude that the District Court did right in instructing the jury to return a verdict against the plaintiff. The duty devolved upon her to show, either a liability upon the written policy introduced in evidence, or upon a completed verbal contract of insurance. She failed in the first instance because of the stipulations of the policy already quoted, in that the deceased was not alive on December 27, when the policy was countersigned by the agent Dunn. She failed in the second place because the undisputed evidence showed that the deceased was dead even when the agent Gibson signed the application and assignment. The testimony of Gibson above set forth could do no more than raise a mere suspicion, or show a bare possibility, that deceased was alive when the application was signed. We do not think it amounted to such evidence as to authorize the submission of the issue to the jury. The testimony of the disinterested witness Burford shows conclusively that the name of the beneficiary was obtained for the agent after Dickey's death. This name was obtained and inserted in the application, so the agent testifies, before he left the yard office, and there is therefore nothing to indicate that the application was signed before Dickey's death. It is needless to announce, much less to cite authorities to support, the proposition that a contract of life insurance consummated after the death of the person whose life constitutes the subject-matter of the contract, is invalid. It can not be contended with any show of reason that there was any contract whatever prior to the time when the agent Gibson signed the application in behalf of the deceased. And for the reason already shown, the contract could not be consummated at that time.

Entertaining, as we do, this view of the evidence, it becomes immaterial for us to inquire whether in any event the agent, who is shown to have been a soliciting agent only, without authority to make or renew

contracts of insurance, and the limitation of whose authority appears in the application signed in behalf of deceased, could have made a binding oral agreement for insurance with the deceased.

The judgment is therefore affirmed.

*Affirmed.*