## LONG et al. v. BANKERS' GUARANTY LIFE CO.
### No. 10958.

Court of Civil Appeals of Texas. Dallas.
Oct. 10, 1931.

Rehearing Denied Nov. 14, 1931.

George Sergeant and Oliver J. Todd, both of Dallas, for appellants.

W. J. Rutledge, Jr., of Dallas, for appellee.

LOONEY, J.

This appeal is from an order granting a temporary injunction in favor of appellee against appellants. The facts giving rise to the litigation are substantially these: The Mutual Life Insurance Association of Texas, chartered in 1904, to conduct a mutual life insurance business, by an amendment to its charter in 1924, changed its principal office from Weatherford to Dallas, Tex., and in 1928 changed its name to "Bankers' Guaranty Life Insurance Company"; on December 16, 1926, before changing its name, it entered into a contract with defendant Long, the pertinent provisions of which are these:

"This contract and agreement entered into this day by and between the Mutual Life Insurance Association of Texas, home office, Dallas, Texas, and E. W. Long, Beaumont, Texas.

"Witnesseth: That for and in consideration of one dollar ($1.00) and other valuable considerations the Mutual Life Insurance Association of Texas hereby appoints E. W. Long as Secretary-Manager of the Beaumont Division of said Association. The said E. W. Long is authorized to solicit business and appoint agents for the Association in connection with the operation of the Beaumont Office.

"The said E. W. Long agrees to furnish the Association an acceptable bond in such amount as may be required from time to time making bond in the amount of One Thousand Dollars ($1,000) upon signing this contract. He further agrees to pay all expenses incurred in connection with the operation of the Beaumont Office, rent, salaries, printing, traveling expenses, etc.; to furnish to the Home Office of the Association a semiannual statement under oath, July 1st, and January 1st, of each year as to the number of applications taken and the number of members paying semi-annual dues; to pay to the home office, at Dallas, on January 1st, and July 1st, of each year, Fifty Cents (.50) for each member paying semi-annual dues;

to submit all policies, application blanks, and literature to the President and Secretary, at the home office, for approval, before having them printed.

"As full compensation for his services, it is agreed that the said E. W. Long shall retain all membership fees collected and all semi-annual dues each year, except Fifty Cents (.50) for every member paying semi-annual dues, so long as this contract is in force. * * *"

In accordance with the contract, Long opened an office in Beaumont, and was active in soliciting and writing insurance, until about January 1, 1930, when it seems trouble with the department of insurance arose, because the corporation did not at that time have, nor had it ever had in either name, a. permit to conduct an insurance business in the state. At this time, the Beaumont branch had about 2,600 members who held $1,000 certificates, and about 300 who held $2,500 certificates; Long had made written reports to and settlements with the company for all policies written by him to and including June, 1929, according to contract, but made no report or settlement for business thereafter transacted, and his failure to do so precipitated this law suit.

After trouble with the department of insurance arose, Long conferred with W. A. Keeling, an attorney at Austin and, on his advice, secured a charter for the "Mutual Life Insurance Association of Texas," for the purpose of taking over the Beaumont office, and the assumption of outstanding policies, and in furtherance of this purpose, under date of February 1, 1930, mailed to each policyholder a letter approved by the department of insurance, the pertinent parts of which are these:

"Mutual Life Insurance Association of Texas
  "Beaumont, Texas

"February 1, 1930

"Dear Policyholder:

"This is to notify you that your policy issued in this office is under the supervision of the Insurance Department of the State of Texas, and that we have qualified under the new law that was passed by the last Legislature, and we were issued a charter for fifty years hence, same being No. 01104.

"We will further state that the Mutual Life Insurance Association of Texas is not connected or affiliated with any other organization or association and that the policies issued in the past are in no wise effected or changed in the least, as they were reinsured under the arrangements with the Department, and the Mutual Life Insurance Association of Texas has assumed all risk and responsibility under your policy, making it valid and binding as heretofore. Your assessments and dues are the same and are to

be paid in the same manner and at the same office as in the past.

"We are highly pleased to advise you thus, as our business affairs have been so conducted that we were able to qualify as a separate organization. Now instead of the writer being your secretary, he has qualified as Secretary-Treasurer, having made the bond as required by law. We have our local Board of Directors, all of which are citizens and policyholders, who are fully qualified to handle the affairs of our splendid organization.

"Thanking you for your past cooperation and trusting that we will continue to receive same, and assuring you that we at all times desire to be fair, frank, and free in all of our dealings with our many thousands of policyholders.

"Trusting that you will be happy to learn of the facts stated above, and with best wishes and kindest personal regards, we are

"Yours very truly,
"Mutual Life Insurance Ass'n of Texas,
  "E. W. Long, Secretary-Treasurer."

The organization by Long of the latter company, the taking over by it of these outstanding policies, and the circular letter to the policyholders, were steps taken, with the knowledge and approval of the officers of plaintiff company, as being necessary to extricate the parties involved from the trouble into which they had fallen. That this consummation was entirely agreeable to officers of plaintiff company is conclusively shown by statements in a letter from Mr. Patterson, president, to Mr. Long, under date of February 3, 1930, as follows:

"As I promised you, Mr. Ingalls, Lloyd and myself are together in the office here today and have discussed your matter quite fully and have decided the proposition I suggested at first thought is very reasonable indeed. We believe that it is treating you exceedingly fair and nice for you to pay us our part of the semi-annual dues which were collected December 1st and due January 1st, according to the contract and one more semi-annual payment which will be due in next June. We regret very much to loose you but the course you pursued may have been the best under the circumstances and it may be possible that we can have a pleasant and profitable connection at some later date.

"We think it best that you have General Keeling prepare your Re-Insurance Contract, taking over all your membership under local Mutual Association and have the Commissioner of Insurance approve this contract and send out a rider to your members similar to the one suggested by me, notifying them of the change of name and that the obligations and responsibilities of the old company are all assumed by the new company which action has been approved by the Insurance Commissioner of Texas."

So it cannot be reasonably doubted that the organization of the local Beaumont Aid Association, and the steps taken to consummate the absorption by it of outstanding policies, were matters well understood and acquiesced in by plaintiffs' officers.

The above detail is given as a background to this controversy, which grew out of a disagreement as to the amount of money Long should pay plaintiff on final settlement.

Plaintiff sued to recover $3,154, alleged to be due under the terms of the contract for policies written by Long and not theretofore settled for; also to recover $5,000 damages, alleged to have resulted to plaintiff because Long transferred the business of the Beaumont office to the new company. Plaintiff also sought to enjoin defendants, pending the suit, from selling, transferring, or in any manner disposing of the properties and business incident to the Beaumont office. The grounds alleged for injunctive relief are substantially that the defendant corporation (new association) was in possession of the business belonging to plaintiff at the Beaumont office, consisting of the membership certificates evidencing the several contracts between individual members and plaintiff; also certain office furniture and fixtures, records relating to such branch office, and other personal property purchased from the proceeds derived from the operation of said Beaumont office; that the defendant Long was attempting to transfer and sell said business to other parties who might thereby obtain a right or interest in said business, which would deprive plaintiff of its value, alleged to be $20,000.

The court issued a temporary restraining order and on hearing November 22, 1930, enjoined defendants, until final trial, "from selling, transferring, or in any manner disposing of the properties and business incident to the Beaumont branch office of plaintiff company, and that all of such properties, including the membership heretofore transferred from plaintiff's Beaumont branch to defendant, Mutual Life Insurance Association, be held by defendant pending final hearing of this cause."

Defendants appealed from this order and urges, among other grounds for reversal, that the contract sued upon is void and unenforceable, because plaintiff, being without license or permit to conduct an insurance business, could not lawfully authorize the writing of insurance, hence the contract necessarily contemplated the violation of both the criminal and civil statutes of the state; that the sole consideration that moved defendant to make the contract was the purported authority given him by plaintiff to write insurance, and as the writing of insurance, under the circumstances, would violate law, the contract is void for illegality of consideration; and further the contract is void because defendant was induced to execute the same on the false representation of plaintiff that it was authorized to write insurance contracts throughout the state.

We will not pass upon these questions, as they pertain to the merits of the cause; but in view of the undisputed facts, we are of opinion that the injunction was not authorized, and should be dissolved.

The injunction was sought to prevent defendants, pending suit, from selling, transferring, or in any other manner disposing of properties and business of the Beaumont office, alleged to belong to plaintiff. The properties claimed by plaintiff consisted of the contracts with policyholders written by Long before the organization of the new company, that were assumed by the latter. The legal effect of this transaction was the making of new contracts, between the new company and the respective policyholders, for in no other way can it be said that the latter company took over these contracts, but whatever legal effect is to be atttributed to the taking over of these contracts by the new association and its assumption of outstanding policies, the steps that led to this consummation, as shown above, were assented to by plaintiff. Other properties alleged by plaintiff are furniture, fixtures, and other personal property purchased from the proceeds derived from the operation of the Beaumont branch office. The amount, kind, character, or value of the furniture, fixtures, and other property, were not alleged. On the hearing no proof was offered, showing that plaintiff owned any such property; in fact, implications from language used in the contract refute this idea, as Long was obligated to pay all expenses incurred in connection with the operation of the Beaumont office, rent, salaries, printing, traveling expenses, etc. The only other property alleged consisted of certain records relating to the business of said office, but the evidence failed to develop that any controversy existed as to the kind and number of policies written at that office; and, furthermore, the record fails to disclose or indicate that defendants had attempted or were threatening or intending to sell, transfer, or in any manner dispose of any properties belonging to the Beaumont office.

The new company was organized for the sole purpose of extricating plaintiffs, its officers, and defendant Long from the trouble in which they were enmeshed because of having conducted an insurance business in violation of law, and it was contemplated that when organized the new company would take over the business of said office and assume the outstanding insurance contracts, just as was done. The injunction in our opinion was not authorized by the facts; its effect will be to embarrass and frustrate defendants in the proper transaction of the business of the new association, to the probable detriment of nu-

merous policyholders, who, in the last analysis, are the ones chiefly interested. The order of court appealed from is reversed, and judgment is rendered for appellants, dissolving the injunction.

Reversed and rendered.