## HUNTER et al. v. NATIONAL AID LIFE ASS'N.

### No. 1410.

Court of Civil Appeals of Texas. Eastland.
March 8, 1935.

Rehearing Denied April 5, 1935.

R. E. Rodgers, of Hamlin, for appellants.

Snyder, Owen & Lybrand, of Oklahoma City, Okl., and Ratliff & Ratliff, of Haskell (Dennis P. Ratliff, of Haskell, of counsel), for appellee.

HICKMAN, Chief Justice.

Appellants, as the sole heirs of Mrs. Emma L. Hunter, deceased, brought this suit against appellee to recover $1,000 on a certificate of insurance together with attorney's fees and penalty. In a nonjury trial judgment was rendered that they take nothing, and this appeal followed.

The facts are undisputed. On May 27, 1932, the district court of Travis county, upon the suit of the Attorney General, appointed Dennis P. Ratliff receiver for the Central West Texas Insurance Association, hereinafter called the Texas Association. The receiver duly qualified the next day, and is still acting in that capacity. That association was a local mutual life insurance association, of which Mrs. Emma L. Hunter was a member in good standing at the time the receiver was appointed. Thereafter the receiver, with the approval of the court and the Attorney General, entered into a contract with appellee, an Oklahoma association, effective June 17, 1932, having for its purpose the conserving and protecting of the rights of the members of the Texas Association. By the terms of this contract the receiver obligated himself to furnish the appellee a certified list of the membership of the Texas Association in good standing on the date of his appointment, alphabetically arranged, and specifying the amount of insurance held by the members respectively in said association. The appellee, by the contract, agreed that it would by mail tender to each adult member of the Texas Association its usual and customary form of benefit certificate in like maximum amount of life insurance as that mentioned in the offeree's present benefit certificate issued by the Tex-

as Association, "said tender, however, to be made upon certain conditions precedent to the effectiveness of said insurance contract." One of the conditions precedent was stated to be that the offeree "shall have signified to first party his desire and purpose to accept said tendered benefit certificate by personally signing said receipt and memorandum within 30 days from the date of said tendered benefit certificate and transmitting the same to the home office of said National Aid Life Association at Oklahoma City, Oklahoma, accompanied by a remittance of $2.00 per One Thousand Dollars maximum death benefits represented by said tendered benefit certificate, but in no case less than the sum of $2.00." Another pertinent provision was expressed in this language: "It is understood and agreed by each of the parties hereto that the corporate or other existence of said Texas Association is not cancelled or merged with that of the National Aid Life Association and that no effort or attempt to do so is contemplated or intended hereby; that none of the property heretofore or now belonging to said Texas Association is sold or transferred to said First Party; that said First Party does not under-write, guarantee or in any wise assume any of the obligations of said Texas Association of any kind or character whether represented by benefit certificates, policies or other contracts, either in writing or existing in parol. * * *"

On June 18, 1932, one day after the contract became effective, the receiver forwarded by express to the state agent in Texas of the appellee at Dallas the certified list of membership of the Texas Association in accordance with the terms of the contract. On June 24th thereafter Mrs. Hunter died. Appellee had no knowledge of this fact, and on the next day, June 25th, it mailed to Mrs. Hunter from its home office in Oklahoma City one of its certificates, together with its letter of transmission and a receipt and memorandum of agreement. These instruments were received by the heirs of Mrs. Hunter at Abilene on the 28th day of June, after her death and burial. The certificate contained this language: "* * * This certificate is not effective unless delivered into the manual possession of the applicant while he is still in good health." On the reverse side thereof was this provision: "This benefit certificate is not to be in force and effect unless and until receipt and memorandum of ratification accompanying said benefit certificate has been executed in duplicate by the personal signature of the proposed insured, or until the original of said receipt and rat-

ification has been transmitted to the home office of the National Aid Life Association at Oklahoma City, Oklahoma, nor until the duplicate attached to the benefit certificate has also been filled out and personally signed by the proposed insured. * * * "

In the receipt and memorandum of agreement accompanying the certificate was this provision:

"I understand and agree that:

"(1) I will not become a member of said National Aid Life Association unless I personally, and not by agent or other representative, sign this receipt while I am yet in good standing and yet alive and transmit the same to the home office of the National Aid Life Association at Oklahoma City, Oklahoma, together with a special contingent assessment of $2.00 per thousand of maximum death benefits, represented by the said proffered benefit certificate and that said acts by me, and the actual delivery of this instrument to the said National Aid Life Association at its home office and its acceptance of said remittance is a condition precedent to any liability of said last named association under the terms of its said benefit certificate, same to be effective subsequent to said delivery and acceptance only."

The letter of transmission informed the addressee that the certificate was tendered under certain conditions, one of which was as follows: "That you will sign and mail to us, fully filled out and personally signed by you, and not by an agent or any other person, the enclosed receipt for benefit certificate and ratification memorandum."

Upon the receipt of the certificate with the accompanying letter of transmission and memorandum of agreement, the heirs of Mrs. Hunter attempted to comply with the conditions, in so far as they could do so.

■ It is obvious, we think, that no contract was consummated between the appellee and the deceased. It is equally certain that the heirs of the deceased could not consummate one after her death. Without a consummated contract there is no basis of liability. The question is so well settled by the authorities that we do not deem it necessary to discuss them. We cite the following taken from appellee's brief: Connecticut Mut. Life Ins. Co. v. Rudolph, 45 Tex. 454; Wright v. Federal Life Ins. Co. (Tex.

Com. App.) 248 S. W. 325; Denton v. Kansas City Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436; Dickey v. Continental Casualty Co., 40 Tex. Civ. App. 199, 89 S. W. 436; Hines v. Kansas City Life Ins. Co. (Tex. Civ. App.) 260 S. W. 688; Brownwood Ben. Ass'n v. Maness (Tex. Civ. App.) 30 S.W.(2d) 1114; National Aid Life Ass'n v. Miller (Tex. Civ. App.) 43 S.W.(2d) 623; Long v. Bankers' Guaranty Life Co.' (Tex. Civ. App.) 43 S.W. (2d) 124; 24 Tex. Jur. p. 691, § 21; Id. p. 655, § 5; note, 17 L. R. A. (N. S.) p. 1144; 37 C. J. p. 400 et seq.

■ One of appellants' theories, as we understand it, is that their suit is maintainable upon the contract between the appellee and the receiver. This contract was not and did not purport to be the policy of insurance. It was nothing more than an agreement to offer one of its certificates to each adult member in good standing in the Texas Association, which offer required acceptance as a condition precedent to the consummation of any contract at all with such member.

■ Neither could such liability be based upon the theory that appellee negligently delayed the sending of the certificate for acceptance. The certificate was sent within one week after the receiver forwarded the information. It was agreed upon the trial that there were approximately 908 members of the old association, and that it required approximately seven different operations in the office of appellee to properly issue a certificate in its association. This stipulation well supports the conclusion that appellee was not guilty of negligence.

■ Further, the question of negligence was immaterial. No contract was consummated between the parties, and the negligence of one of the parties which may have prevented its consummation cannot be given the effect of having brought the contract into existence. Modern Woodmen of America. v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 858; Victory Life Ins. Co. v. Ferrell (Tex. Civ. App.) 24 S.W.(2d) 774; Brownwood Ben. Ass'n v. Maness, supra.

Our views above discussed render it unnecessary for us to consider the question of attorney's fees and penalty. There was no error in the judgment of the trial court, and the same is accordingly affirmed.